### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| GR OPCO, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| SUGARHOUSE WEALTH PARTNERS, INC. | ) | |
|     Defendants. | ) | |

### COMPLAINT

NOW COMES the Plaintiff, GR OPCO, LLC ("Plaintiff" or "GR OPCO"), by and through its attorneys, and for its Complaint against Defendant, Sugarhouse Wealth Partners, Inc. ("Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for trademark infringement and unfair competition arising from Defendant's infringement of GR OPCO's federally-registered trademarks, E11EVEN and E11EVEN MIAMI. Despite knowing of GR OPCO's exclusive trademark rights, Defendant has infringed these rights by offering services under a confusingly similar mark, ELEVEN SLC, specifically in connection with the sale and marketing of nightclub services. It appears, furthermore, that Defendant intends to expand its infringing use by selling clothing bearing its infringing mark.

### THE PARTIES

2.      Plaintiff GR OPCO, LLC ("GR OPCO"), is a Florida limited liability company with its principal place of business at 29 N.E. 11th Street; Miami, Florida 33132.

3.      Upon information and belief, Defendant, Sugarhouse Wealth Partners, Inc. ("Defendant") is a Utah corporation with its principal place of business at 609 S. State Street; Salt

Lake City, Utah 84106.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and § 1338 (a) and (b) because GR OPCO asserts claims arising under federal trademark laws, including 15 U.S.C. § 1114 and § 1125(a), and involving matters of unfair competition related to trademark infringement.

5.      This Court has personal jurisdiction over Defendant because Defendant's infringement activities giving rise to these claims is intentionally directed at GR OPCO, a citizen of this State of Florida, and has caused and will continue to cause GR OPCO harm in its home State of Florida.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims, including the harm suffered by GR OPCO, a resident of this District, occurred in this District, and because Defendant expects or should reasonably expect that their acts and omissions have legal consequences in this District.

7.      Defendant has marketed the infringing services in the Southern District of Florida through its website, through which Florida residents can purchase event tickets and table booking at Defendant's club, as well as, on information as belief, can soon purchase and have delivered various clothing items bearing Defendant's infringing mark.

## GR OPCO'S TRADEMARKS AND SERVICE MARKS

8.      GR OPCO is the owner of the internationally-recognized nightclub, E11EVEN MIAMI. Known for its star-studded parties, next-level hospitality, state-of-the-art sound system, world-class disc jockeys, jaw-dropping aerialists, and mesmerizing theatrical performances,

E11EVEN MIAMI was recently ranked as the 6th best nightclub in the world by the International Nightlife Association. (*See* https://www.nightlifeinternational.org/en/congress-awards/100-world-s-best-clubs.)

9.    On August 1, 2013, GR OPCO filed an "intent to use" application for federal registration of the trademark "E11EVEN MIAMI" (the "E11EVEN MIAMI Mark") with the United States Patent and Trademark Office ("USPTO"). GR OPCO filed proof of use of the E11EVEN MIAMI Mark with the USPTO on October 14, 2015.

10.    On December 22, 2015, the USPTO granted GR OPCO's application and issued United States Registration Number 4,874,841 for the E11EVEN MIAMI Mark. The E11EVEN MIAMI Mark is registered for use in connection with "Entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances" in International Class 41. A true and correct copy of the registration is attached hereto and marked as **Exhibit A**.

11.    The E11EVEN MIAMI Mark was promptly registered on the Principal Register. GR OPCO's registration and ownership of the E11EVEN MIAMI Mark remains active.

12.    Similarly, GR OPCO owns the federally-registered trademark "E11EVEN" (the "E11EVEN Mark").

13.    On November 7, 2016, GR OPCO filed an "intent to use" application for federal registration of the E11EVEN Mark with the USPTO. GR OPCO filed proof of use with the USPTO on October 15, 2019.

14.    On November 26, 2019, the USPTO issued United States Registration Number 5,921,909 for the E11EVEN Mark for use in connection with "clothing, namely, shirts, swimwear; footwear, headwear (IC 025); spirits and liqueurs (IC 033); services providing food and beverage,

namely, restaurant and bar services; serving of food and drinks services provided at a nightclub; providing temporary accommodation at hotel (IC 043)." A true and correct copy of the registration of the E11EVEN Mark is attached hereto and marked as **Exhibit B**.

15.     The E11EVEN Mark was promptly registered on the Principal Register. GR OPCO's registration and ownership of the E11EVEN Mark remains active.

16.     Together, the E11EVEN Mark and the E11EVEN MIAMI Mark are known as "the Marks."

17.     Since approximately February 7, 2014, GR OPCO has used the Marks as trademarks in connection with the marketing, advertising, offering for sale and sale of its clothing, such as t-shirts, headwear, and swimsuits (the "Goods"), and as service marks in connection with its provision of restaurant and bar services, serving food and drinks provided at a nightclub, and entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances (the "Services").

18.     GR OPCO has used the Marks continuously since February 7, 2014 to identify its Goods and Services and to distinguish them from those sold by others, by, among other things, prominently displaying the Marks on the front of the E11EVEN MIAMI nightclub, on advertising and promotional materials such as its website, social media, business cards, and packaging, on clothing such as hats, t-shirts, footwear, and swimwear, and other documents and materials such as menus, invoices, agreements, letterhead, and the like.

19.     GR OPCO uses the Marks in advertising, promoting, and selling its Goods and Services through its website, online advertisements, and social media accounts, including Instagram, Facebook, and TikTok. Below are images of GR OPCO's website for E11EVEN

MIAMI and its Goods and Services featuring the Marks.












20.    GR OPCO's Marks have obtained secondary meaning in the consumer marketplace. The Marks are internationally known and have been recognized for the high quality of the Goods and Services they represent. (*See* E11EVEN MIAMI's ranking as No. 6 on the list of World's Best Nightclubs, https://www.nightlifeinternational.org/en/congress-awards/100-world-s-best-clubs.)

21.    GR OPCO's Marks are widely used and recognized on the Internet and on social media. E11EVEN MIAMI's Instagram account has over 653,000 followers; its Facebook profile has over 225,000 followers. These followers include club promoters and nightclub patrons from across the United States and around the world.

22.     GR OPCO promotes and sells its Goods and Services through its website and social media accounts to individuals across the United States and around the world.

23.     GR OPCO has a bona fide intention to use its Marks to expand its brick and mortar nightclub operations to the western region of the United States, including states in Defendant's geographical region.

24.     GR OPCO has invested substantial time, effort and financial resources promoting its Marks in interstate and global commerce by directly marketing and advertising its nightclub and related Goods and Services to club promoters, nightclub patrons, and other potential and existing customers around the world. GR OPCO has cultivated impressive recognition and substantial goodwill in the Marks, and it has established a reputation for excellence in the quality of its Goods and Services sold under the Marks.

25.     As a result of its efforts, GR OPCO has obtained consumer recognition of its distinctive Marks used in connection with its Goods and Services. The Marks and the goodwill associated therewith have become one of GR OPCO's most valuable assets.

**DEFENDANT'S NIGHTCLUB**

26.     Upon information and belief, Defendant operates a nightclub in Salt Lake City, Utah called "Eleven SLC" and sells related goods and services using the mark "ELEVEN SLC" (the "Infringing Mark").

27.     Upon information and belief, on January 24, 2025, without GR OPCO's knowledge or consent, Defendant began marketing, advertising, offering for sale and selling its nightclub services and related goods displaying the Infringing Mark "ELEVEN SLC" on the front of its nightclub and its advertising and promotional materials.

28.     Upon information and belief, Defendant opened its nightclub on January 27, 2025, providing restaurant and bar services, food and drinks services to nightclub guests, and musical and entertainment services featuring dancers, disc jockeys, and other theatrical performers.

29.     These are substantially similar to the services GR OPCO provides at its E11EVEN MIAMI nightclub using its federally registered Marks.

30.     Defendant's Infringing Mark "ELEVEN SLC" is only a slight variation of GR OPCO's Marks "E11EVEN" and "E11EVEN MIAMI." The Infringing Mark uses the same word as GR OPCO's Marks, swapping only the number "11" for the letter "L." The name of Defendant's nightclub mirrors the syntax of GR OPCO's E11EVEN MIAMI club, naming the club "Eleven" followed by "SLC," an abbreviation for the city of its location: Salt Lake City.

31.     The similarities described above suggest that Defendant's nightclub, "ELEVEN SLC," is a branch location or other nightclub affiliated with GR OPCO's world-renowned E11EVEN MIAMI nightclub, offering services substantially similar to those GR OPCO provides at E11EVEN MIAMI using its federally registered Marks.

32.     Although the goods and services Defendant provides under the Infringing Mark are of inferior quality, they are similar enough to GR OPCO's Goods and Services to cause confusion as to their source. As shown in the images below, Defendant's nightclub website, bearing the Infringing Mark, is almost identical in format, presentation, and content to the website for GR OPCO's E11EVEN MIAMI.









33.    Upon information and belief, based on the advertisement from Defendant's website shown above, Defendant intends to open an "Official Store" to sell branded merchandise, such as shirts and hats, bearing the Infringing Mark.

34.    Defendant has created an Instagram account, Facebook profile, and TikTok account for its nightclub, each bearing the Infringing Mark "ELEVEN SLC." Defendant uses these social media accounts to promote the events and nightclub services offered at Defendant's nightclub.

35.    Upon information and belief, Defendant intends to use these social media accounts to reach and promote its nightclub services to club promoters, nightclub patrons, and other potential customers in the United States and around the world.

36.    On January 21, 2025, GR OPCO's attorney sent a cease-and-desist letter to Defendant informing Defendant of GR OPCO's rights in the Marks and demanding the immediate cessation of the Infringing Mark in Defendant's operation, sale, and promotion of its nightclub and related goods and services. Upon information and belief, in spite of receiving this letter, Defendant continues to use the Infringing Mark in the operation of its nightclub and the promotion of its related goods and services.

## COUNT I
### Federal Trademark Infringement – 15 U.S.C. § 1114

37.     GR OPCO incorporates into this Count I each and every allegation contained in paragraphs 1-36 above of this Complaint as though fully set forth herein.

38.     GR OPCO owns the right to use the federally registered trademark "E11EVEN MIAMI" in connection with the sale and promotion of entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances, most famously offered at its nightclub E11EVEN MIAMI. (*See* Ex. A.)

39.     GR OPCO owns the right to use the federally registered trademark "E11EVEN" in connection with the sale and promotion of clothing, such as shirts, swimwear, footwear, and headwear, spirits and liqueurs, and the provision of food and beverage services, restaurant and bar services, the service of food and drinks at nightclubs, and the provision of temporary accommodations at hotels. (*See* Ex. B.)

40.     Pursuant to 15 U.S.C. § 1072, at all relevant times, Defendant had constructive notice of GR OPCO's nationwide ownership rights in the Marks through their federal registration with the USPTO and public display on the Principal Register.

41.     Since February 7, 2014, GR OPCO has continuously used the Marks to identify its Goods and Services and to distinguish them from those sold by others, by, among other things, prominently displaying the Marks on the front of the E11EVEN MIAMI nightclub, on advertising and promotional materials such as its web site, social media, business cards, and packaging, on clothing such as hats, t-shirts, footwear, and swimwear, and other documents and materials such as menus, invoices, agreements, letterhead, and the like.

42.     GR OPCO's Marks have obtained secondary meaning in the consumer marketplace. The consuming public recognizes the Marks and associates them with GR OPCO and the high quality of its Goods and Services.

43.     GR OPCO has invested substantial time, effort and financial resources in establishing substantial recognition and goodwill in the Marks. The Marks and the goodwill associated therewith have become one of GR OPCO's most valuable assets.

44.     The Marks are inherently distinctive as applied to GR OPCO's Goods and Services, serving as a source-identifier for GR OPCO's Goods and Services.

45.     Defendant is engaged in the promotion and sale of goods and services substantially similar to those associated with GR OPCO's Marks, including the provision of restaurant and bar services, the service of food and drinks at nightclubs, and musical and entertainment services featuring dancers, disc jockeys, and other theatrical performers.

46.     Upon information and belief, Defendant intends to engage in the sale of merchandise, such as shirts, hats, and other clothing similar to the clothing GR OPCO sells using its Marks.

47.     In its promotion and sale of the aforementioned goods and services, Defendant uses an Infringing Mark, "ELEVEN SLC" that is nearly identical to GR OPCO's Marks. Defendant's nightclub website is almost identical in format, presentation, and content to the website for GR OPCO's E11EVEN MIAMI. Further, like the Goods and Services sold under GR OPCO's Marks, Defendant's goods and services are marketed to similar audiences using similar channels of trade and advertisement, including the Internet and social media accounts such as Instagram, Facebook, and TikTok.

12

48.     GR OPCO is not affiliated or associated with the goods and services sold or advertised by Defendant under the Infringing Mark. GR OPCO did not provide its authorization or consent to Defendant's use of its Infringing Mark.

49.     Defendant's Infringing Mark is substantially similar to GR OPCO's Marks in its visual appearance and represents goods and services substantially similar to those offered by GR OPCO using its Marks. Defendant's use of the Infringing Mark is likely to cause confusion, mistake or deception among purchasers as to the source of Defendant's goods and services.

50.     Defendant's conduct is willful and intentional. It represents a conscious disregard for GR OPCO's rights in the Marks and a calculated decision to capitalize on the valuable goodwill GR OPCO has cultivated in the Marks.

51.     Defendant's acts constitute trademark and service mark infringement in violation of 15 U.S.C. § 1114.

52.     Upon information and belief, Defendant has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill from its infringement on GR OPCO's rights in the Marks.

53.     Upon information and belief, Defendant intends to continue its conduct by continuing to provide its goods and services using the Infringing Mark. If not preliminarily and permanently enjoined by this Court, Defendant will continue its unauthorized conduct by using the confusingly similar Infringing Mark on the front of its nightclub and in the sale and promotion its goods and services.

54.     As a direct and proximate result of Defendant's trademark infringement, GR OPCO has suffered, and will continue to suffer, irreparable loss of income, profits, and goodwill.

Defendant's acts have caused and, unless and until such acts are enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, GR OPCO great and irreparable injury.

55.     GR OPCO has no adequate remedy at law. Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendant from continuing its infringement of the Mark, is the only remedy that will afford GR OPCO meaningful relief.

56.     Under 15 U.S.C. § 1117, GR Opco is entitled to recover its actual damages and Defendant's profits attributable to their infringement of GR OPCO's Marks and to be awarded three times this amount. Moreover, this case is exceptional, and GR OPCO is entitled to recover its reasonable attorneys' fees.

<u>**COUNT II**</u>
**False Designation of Origin – 15 U.S.C. § 1125(a)**

57.     GR OPCO realleges and incorporates by reference the allegations of paragraphs 1 – 56 above, as though fully set forth.

58.     GR OPCO owns the right to use the federally registered trademark "E11EVEN MIAMI" in connection with the sale and promotion of entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances, most famously offered at its nightclub E11EVEN MIAMI. (*See* Ex. A.)

59.     GR OPCO owns the right to use the federally registered trademark "E11EVEN" in connection with the sale and promotion of clothing, such as shirts, swimwear, footwear, and headwear, spirits and liqueurs, and the provision of food and beverage services, restaurant and bar services, the service of food and drinks at nightclubs, and the provision of temporary accommodations at hotels. (*See* Ex. B.)

60.     Pursuant to 15 U.S.C. § 1072, at all relevant times, Defendant had constructive notice of GR OPCO's nationwide ownership rights in the Marks through their federal registration with the USPTO and public display on the Principal Register.

61.     Since February 7, 2014, GR OPCO has continuously used the Marks to identify its Goods and Services and to distinguish them from those sold by others, by, among other things, prominently displaying the Marks on the front of the E11EVEN MIAMI nightclub, on advertising and promotional materials such as its web site, social media, business cards, and packaging, on clothing such as hats, t-shirts, footwear, and swimwear, and other documents and materials such as menus, invoices, agreements, letterhead, and the like.

62.     Defendant is engaged in the promotion and sale of goods and services substantially similar to those associated with GR OPCO's Marks, including the provision of food and beverage services, restaurant and bar services, the service of food and drinks at nightclubs, and musical and entertainment services featuring dancers, disc jockeys, and other theatrical performers.

63.     Upon information and belief, Defendant intends to engage in the sale of merchandise, such as shirts, hats, and other clothing similar to the clothing GR OPCO sells using its Marks, bearing the Infringing Mark.

64.     In its promotion and sale of the aforementioned goods and services, Defendant uses an Infringing Mark, "ELEVEN SLC," that is nearly identical to GR OPCO's Marks. Defendant's nightclub website is almost identical in format, presentation, and content to the website for GR OPCO's E11EVEN MIAMI. Further, like the Goods and Services sold under GR OPCO's Marks, Defendant's goods and services are marketed to similar audiences using similar channels of trade

and advertisement, including the Internet and social media accounts such as Instagram, Facebook, and TikTok.

66. Defendant's unauthorized use of the Infringing Mark in connection with the promotion and sale of its goods and services is likely to cause confusion, mistake or deception among purchasers, and create the false impression that Defendant's goods and services are affiliated, associated, connected, sponsored, approved, or otherwise provided by GR OPCO in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66. Defendant's conduct is willful and demonstrates an intent to exploit and capitalize on the goodwill and brand recognition GR OPCO has cultivated in the Marks.

67. Upon information and belief, Defendant has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill from its use of the Infringing Mark.

68. Upon information and belief, Defendant intends to continue its conduct by continuing its use of the Infringing Mark to market and sell goods and services substantially similar to those offered and sold under GR OPCO's Marks. If not preliminarily and permanently enjoined by this Court, Defendant will continue its unauthorized conduct by using the confusingly similar Infringing Mark on the front of its nightclub and in the sale and promotion its goods and services.

69. As a direct and proximate result of Defendant's trademark infringement, GR OPCO has suffered, and will continue to suffer, irreparable loss of income, profits, and goodwill.

70. Under 15 U.S.C.§ 1117, GR OPCO is entitled to recover its actual damages and Defendant's profits attributable to its infringement of GR OPCO's marks. Moreover, this case is exceptional, and GR OPCO is entitled to recover its reasonable attorneys' fees.

71.     GR OPCO has no adequate remedy at law. Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendant from continuing to violate GR OPCO's rights in the Marks is the only remedy that will afford GR OPCO meaningful relief.

**COUNT III**
**Unfair Competition – Florida Common Law**

72.     GR OPCO realleges and incorporates by reference the allegations of paragraphs 1 – 71 above, as though fully set forth.

73.     GR OPCO owns the right to use the federally registered trademark "E11EVEN MIAMI" in connection with the sale and promotion of entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances, most famously offered at its nightclub E11EVEN MIAMI. (*See* Ex. A.)

74.     GR OPCO owns the right to use the federally registered trademark "E11EVEN" in connection with the sale and promotion of clothing, such as shirts, swimwear, footwear, and headwear, spirits and liqueurs, and the provision of food and beverage services, restaurant and bar services, the service of food and drinks at nightclubs, and the provision of temporary accommodations at hotels. (*See* Ex. B.)

75.     Pursuant to 15 U.S.C. § 1072, at all relevant times, Defendant had constructive notice of GR OPCO's nationwide ownership rights in the Marks through their federal registration with the USPTO and public display on the Principal Register.

76.      Since February 7, 2014, GR OPCO has continuously used the Marks to identify its Goods and Services and to distinguish them from those sold by others, by, among other things, prominently displaying the Marks on the front of the E11EVEN MIAMI nightclub, on advertising and promotional materials such as its web site, social media, business cards, and packaging, on

17

clothing such as hats, t-shirts, footwear, and pants, and other documents and materials such as menus, invoices, agreements, letterhead, and the like.

77.     GR OPCO's Marks have obtained secondary meaning in the consumer marketplace. The consuming public recognizes the Marks and associates them with GR OPCO and the high quality of its Goods and Services. The Marks are inherently distinctive as applied to GR OPCO's Goods and Services, serving as a source-identifier for GR OPCO's Goods and Services.

78.     GR OPCO has invested substantial time, effort and financial resources in establishing substantial recognition and goodwill in the Marks. The Marks and the goodwill associated therewith have become one of GR OPCO's most valuable assets.

79.     Defendant is engaged in the promotion and sale of goods and services substantially similar to those associated with GR OPCO's Marks, including the provision of food and beverage services, restaurant and bar services, the service of food and drinks at nightclubs, and musical and entertainment services featuring dancers, disc jockeys, and other theatrical performers.

80.     Upon information and belief, Defendant intends to engage in the sale of merchandise, such as shirts, hats, and other clothing and accessories similar to the clothing GR OPCO sells using its Marks, bearing the Infringing Mark.

81.     In its promotion and sale of the aforementioned goods and services, Defendant uses an Infringing Mark, "ELEVEN SLC," that is nearly identical to GR OPCO's Marks. Defendant's nightclub website is almost identical in format, presentation, and content to the website for GR OPCO's E11EVEN MIAMI. Further, like the Goods and Services sold under GR OPCO's Marks, Defendant's goods and services are marketed to similar audiences using similar channels of trade

and advertisement, including the Internet and social media accounts such as Instagram, Facebook, and TikTok.

82.    Upon information and belief, the audiences Defendant intends to reach using its website and social media accounts include club promoters, nightclub patrons, and potential customers around the United States, including in the State of Florida.

83.    GR OPCO is not affiliated or associated with the goods and services sold or advertised by Defendant under the Infringing Mark. GR OPCO did not provide its authorization or consent to Defendant's use of its Infringing Mark.

84.    Defendant's Infringing Mark is substantially similar to GR OPCO's Marks in its visual appearance and represents goods and services substantially similar to those offered by GR OPCO using its Marks. Defendant's use of the Infringing Mark is likely to cause confusion, mistake or deception among purchasers as to the source of Defendant's goods and services.

85.    Defendant's conduct is willful, intentional, fraudulent, and deceitful. It represents a conscious disregard for GR OPCO's rights in the Marks and a calculated decision to capitalize on the valuable goodwill GR OPCO has cultivated in the Marks.

86.    Upon information and belief, Defendant has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill from its infringement on GR OPCO's rights in the Marks.

87.    Upon information and belief, Defendant intends to continue its conduct by continuing to provide its goods and services using the Infringing Mark. If not preliminarily and permanently enjoined by this Court, Defendant will continue its unauthorized conduct by using

the confusingly similar Infringing Mark on the front of its nightclub and in the sale and promotion

its goods and services.

88.     As a direct and proximate result of Defendant's infringement activity, GR OPCO

has suffered, and will continue to suffer, irreparable loss of income, profits, and goodwill.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, GR OPCO, being without adequate remedy at law, and being

threatened with continuing irreparable injury, respectfully requests that this Court:

A.     Enter a preliminary and permanent injunction enjoining Defendant, its officers,

directors, employees and agents from:

i.     Directly or indirectly using the Infringing Mark or the Marks, or otherwise copying,
reproducing, imitating or using any mark confusingly similar to either mark,
including without limitation, any use on Defendant's goods, services, storefront,
advertising or promotional materials, clothing or merchandise;

ii.     Directly or indirectly using the Infringing Mark or the Marks on the Internet, social
media, or other electronic means of dissemination; or

iii.     Any other act of infringement;

B.     Order that all labels, signs, prints, packages, wrappers, receptacles, and

advertisements, promotional materials or any other documents in the possession of Defendant,

electronic or otherwise, bearing a mark that is likely to cause confusion with the Mark shall be

delivered up and destroyed;

C.     Order that Defendant be required to account and disgorge to GR OPCO any and all

profits derived by Defendant by reason of said acts of infringement complained of herein;

D.      Order that GR OPCO be awarded all available compensatory, consequential, and

punitive damages in an amount to be proven at trial;

E.      Order that GR OPCO be awarded treble damages;

F.      Order that GR OPCO be awarded their costs, attorneys' fees and interest; and

G.      Grant such other and further relief as this Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

                                        Respectfully Submitted,

Date:   March 7, 2025                   By:*/s/Elissa A. Tisdahl*
                                        Elissa A. Tisdahl, Esq.
                                        etisdahl@weisbergiplaw.com
                                        Florida Bar No. 85521
                                        WEISBERG I.P. LAW, P.A.
                                        1232 N. University Drive
                                        Plantation, FL 33322
                                        (954) 828-1488 (Telephone)
                                        (954) 828-9122 (Facsimile)
                                        *Counsel for Plaintiff*

                                        Larry Byrne, Esq.
                                        Florida Bar No. 1057467
                                        PEDERSEN & HOUPT, P.C.
                                        161 North Clark Street, Suite 2700
                                        Chicago, Illinois 60601
                                        Telephone: (312) 261-2155
                                        E-mail: lbyrne@pedersenhoupt.com
                                        Lead counsel for Plaintiff